IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL ALLEN NUNLEY,                    Case No. 2:12-cv-02043-MA

        Petitioner,                       OPINION AND ORDER

   v.

MARK NOOTH, Superintendent,
Snake River Correctional
Institution,

        Respondent.

TONIA L. MORO
Assistant Federal Public Defender
19 S. Orange St.
Medford, OR 97501

    Attorney for Petitioner

ELLEN F. ROSENBLUM
Attorney General
KRISTEN E. BOYD
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301

    Attorneys for Respondent

MARSH, Judge

    Petitioner Michael Allen Nunley, an inmate at Snake River

Correctional Institution, brings this habeas corpus proceeding

1 - OPINION AND ORDER

pursuant to 28 U.S.C. § 2254.  For the reasons set forth below, the petition is denied, and this proceeding is dismissed.

## BACKGROUND

On July 31, 2006, in an 18-count indictment, petitioner was charged with assault, kidnapping, attempted aggravated murder, and various sex crimes.  Resp. Ex. 103.  The charges stemmed from petitioner's three-day confinement and physical and sexual torture of the victim, "C.D."

On December 28, 2006, petitioner informed his court appointed attorney, Downing Bethune, that he wanted a new attorney. Transcript of Proceedings (Tr.) p. 2.  After a January 17, 2007 hearing, the trial court denied petitioner's request for substitute counsel.  Id. at 5.  Petitioner made no other requests for new counsel or complaints of Mr. Bethune's representation to the trial court.

A four-day jury trial began on March 5, 2007.  At trial, the evidence against petitioner was overwhelming and largely undisputed.  C.D. testified at length at trial and described the following events.  On July 23, 2006, petitioner and his girlfriend, Dayna Nordin, attended an afternoon barbeque where C.D. was also a guest.  Tr. 184-85.  Petitioner and the victim were long-time friends, and after the barbeque, petitioner and C.D. went to petitioner's house for drinks while Nordin went to work.  Tr. 185-86, 221-23. When at the house, petitioner's mood was friendly, but

his demeanor changed suddenly.  Tr. 224.  Petitioner accused C.D. of taking his cellphone, which she admitted doing.  *Id.*  Petitioner became violent.  Tr. 225-27.  Petitioner's girlfriend Nordin and friend Gregory Franklyn lived at petitioner's house and periodically came and went from the house during C.D.'s confinement.

Petitioner began by repeatedly hitting C.D. in the face, demanding the return of his cellphone, then he removed C.D.'s belt and wrapped it around C.D.'s neck, choking her.  Tr. 227-28. Petitioner then dragged C.D. by the belt into the hallway and tore off her clothes.  Tr. 228.  Petitioner called C.D. a "dumb-ass bitch" and put his fist in her anus.  Tr. 228.  C.D. described the pain as excruciating, and she lost consciousness.  *Id.*  When C.D. regained consciousness, there was blood all over, and petitioner made her lick the blood.  Tr. 228.  Petitioner then dragged C.D. by the belt to the bathroom, put his penis in her mouth and made C.D. drink his urine.  Tr. 229.  Petitioner told C.D. that if she refused, he would beat her again.  *Id.*  Petitioner then dragged C.D. to the couch and instructed her to stay there.  C.D. did not move because she was afraid petitioner would kill her.  Tr. 230. When C.D. saw Franklyn that night, she told him to call the police. Tr. 275.  The police were not called.

In exchange for leniency, Nordin testified at trial.  Nordin testified that about 12:40 a.m. Monday, July 24, she returned to

3 - OPINION AND ORDER

the house and saw C.D. and petitioner sitting naked on the couch, and a belt around C.D.'s neck. Tr. 187. Nordin went to the bedroom and noticed blood all over. Tr. 188. Petitioner and C.D. then appeared in the bedroom doorway, with petitioner holding the belt around C.D.'s neck. Petitioner told C.D. to inform Nordin why she was there, and C.D. said "I took his phone." Tr. 189. C.D. was on her knees and told Nordin that if "if you leave, he'll kill me." Tr. 190. A short time later, petitioner made C.D. lick Nordin's anus or genitalia. Tr. 193, 232. Nordin testified that she was afraid petitioner would hurt C.D. further if she left. Tr. 193.

The house was hot, and petitioner wanted to sleep in a tent outside. Tr. 193. Petitioner dragged C.D. outside to set up the tent, and petitioner, C.D. and Nordin slept in the tent. Tr. 232. In the morning, they went inside. At some point, petitioner's cousin came over, and there was discussion about obtaining petitioner's cellphone. Tr. 199. Nordin went to work in the afternoon.

Petitioner later heated a Zippo lighter and inserted the hot lighter into C.D.'s vagina, burning her. Tr. 234-35. Petitioner also heated the Zippo lighter and held it to C.D.'s anus, burning her. Tr. 235-36. Petitioner made C.D. insert the sheath of a sword into her vagina, and then stuck his foot onto the sheath pressing it far inside C.D., causing great pain. Tr. 237.

4 - OPINION AND ORDER

Nordin testified that she returned from work early Tuesday morning, July 25, 2006 to find C.D. still at the house.   Nordin later left to try to find petitioner's cellphone, but was unable to locate it.   Tr. 200.   When Nordin returned without the cellphone, C.D. was on the couch with the belt around her neck.   Tr. 202. Petitioner took C.D. to the bedroom and cut C.D.'s hair.   Tr. 202, 220.   Petitioner instructed C.D. to lay on the bed and not move. Tr. 238.   Petitioner then ignited a blow torch and burned her buttocks and arm.   Tr. 238.   Petitioner fell asleep sometime after burning C.D. with the blow torch.

After petitioner fell asleep, C.D. attempted to get out the front door, but it was locked.   At that time, Franklyn came through the back door leaving it open, and C.D. escaped out the back door. C.D. ran naked down the street to a park.   When C.D. saw a man, she asked him to call the police because she had been raped.   Tr. 244. The man gave C.D. his shirt and called 911.   While waiting for the police to arrive, petitioner arrived at the park on his bicycle and spoke to C.D.   Tr. 258.   When petitioner realized the police had been called, petitioner fled, but was quickly apprehended and identified by C.D.   Tr. 68.

Allie Draper, the emergency room nurse who completed a sexual assault examination of C.D. on July 25, 2006, testified at trial. Draper testified that she recorded the events as described by C.D., collected physical evidence, and completed a report following

C.D.'s arrival at the hospital. Tr. 88. Draper testified extensively about the abrasions, lacerations, and cuts she saw on C.D.'s body, which she had contemporaneously recorded on diagrams. Tr. 95-99.

Daniel Petersen, a forensic scientist with the Oregon State Police DNA unit, testified that he examined the sexual assault forensic evidence kit obtained from C.D. and swabs obtained from petitioner's penis, scrotum and pubic hair. Tr. 315, 319-20. Petersen also testified that he examined swabs collected from a lighter, a walking stick and the blade of a sword collected from petitioner's house. Tr. 321. Petersen concluded that the DNA samples from the lighter, walking stick, and petitioner's penis, scrotum and pubic hair matched the DNA profile of C.D. Tr. 323-25.

Petitioner was convicted of three counts of Assault in the Second Degree, two counts of Kidnapping in the First Degree, one count of Sodomy in the First Degree, and three counts of Unlawful Sexual Penetration in the First Degree and was sentenced to 462 months. Ex. 102.

Petitioner filed a direct appeal challenging the trial court's: (1) admission of two exhibits for the jury's use during deliberations that were not admitted and received into evidence during trial; (2) denial of his motion for substitute counsel; and (3) imposition of sentence. The Court of Appeals affirmed

petitioner's conviction without opinion, and the Oregon Supreme Court denied review.  Resp. Exs. 108, 109.

Petitioner filed a *pro se* state post-conviction proceeding alleging assorted claims of ineffective assistance of trial and appellate counsel and cumulative error.  After counsel was appointed, petitioner filed a "Formal Petition For Post Conviction Relief," in which petitioner alleged two claims: (1) trial counsel was ineffective when he struck petitioner and told him to shut up during trial, and (2) trial counsel was ineffective when he refused to permit petitioner to testify on his own behalf.   The state post-conviction court denied all post-conviction relief.  Resp. Ex. 121, p. 20-21.

Petitioner appealed to the Oregon Court of Appeals.  Finding no "arguably meritorious" issues on appeal, petitioner's post-conviction appellate counsel filed a brief pursuant to *State v. Balfour*, 311 Or. 434, 814 P.2d 1069 (1991).  Petitioner filed "Section B" wherein he alleged three claims for relief: (1) that the post-conviction court erred by failing to *sua sponte* appoint him substitute counsel because his post-conviction counsel noted there may be a conflict concerning the appropriateness of submitting an affidavit from a trial witness into evidence at post-conviction; (2) he received ineffective assistance of trial counsel when his attorney hit him and told him to shut up during trial; and (3) trial counsel was ineffective when counsel refused to permit

7 - OPINION AND ORDER

petitioner to testify on his own behalf at trial. The Oregon Court of Appeals summarily affirmed, and the Oregon Supreme Court denied review. Resp. Ex. 126, 127.

## DISCUSSION

In his *pro se* habeas corpus petition (#2) to this court, petitioner raises Grounds One through Eight. After appointment of counsel, petitioner filed an amended petition (#15), in which he asserts Grounds Nine through Sixteen, and in Ground Seventeen, purports to incorporate by reference Grounds One through Eight. In his briefing to this court, petitioner discusses only the merits of Ground Ten. Respondent argues relief should be denied because petitioner's claims are not properly before the court, are procedurally defaulted, or have been denied on the merits in a state court decision that is entitled to deference.

## I. Unargued Claims

As noted above, petitioner fails to provide argument to support Grounds One through Nine, and Grounds Eleven through Seventeen of his amended petition. Additionally, petitioner does not attempt to refute respondent's argument that these claims do not entitle him to habeas corpus relief. I conclude that petitioner has failed to sustain his burden of demonstrating why he is entitled to relief on his unargued claims. *See Lambert v. Blodgett*, 393 F.3d 943, 970 n. 16 (9th Cir. 2004)(petitioner bears burden of proving his case); *Davis v. Woodford*, 384 F.3d 628, 638

8 - OPINION AND ORDER

(9th Cir. 2004)(same).    Nevertheless, the court has reviewed his unargued claims and is satisfied that petitioner is not entitled to relief on Grounds One through Nine and Eleven through Seventeen.

## II.  Ground Ten

### A.  AEDPA Standards

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), an application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was (1) "contrary to, or involved an unreasonable application of, clearly-established federal law, as determined by the Supreme Court of the United States" or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

A state court decision is "contrary to" federal law under the AEDPA if it either fails to apply the correct Supreme Court authority or applies the correct controlling authority to a case involving "materially indistinguishable" facts but reaches a different result.  *Williams v. Taylor*, 529 U.S. 362, 405-07, 413 (2000).  Similarly, a state court decision is an unreasonable application of federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of

the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)(citations omitted).

An unreasonable application of federal law is a different than an incorrect application of federal law. *Hibbler v. Benedetti*, 693 F.3d 1140, 1148 (9th Cir. 2012). "'[T]he question ... is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold.'" *Id.* at 1146 (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Moreover, the state court's findings of fact are presumed correct, and a petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**B.   Analysis – Denial of Substitute Counsel**

Petitioner contends that the state court unreasonably applied clearly established federal law when it denied his motion for substitute counsel as set forth in Ground Ten of his amended petition:

> **Ground 10**: Petitioner was denied Due Process pursuant to the Fourteenth Amendment and his right to counsel pursuant to the Sixth Amendment when the trial court denied his motion to appoint new counsel.

> **Supporting Facts**: Prior to making his motion, petitioner's relationship with his trial attorney had deteriorated to the point that he did not trust his attorney and believed he had a conflict of interest. After having difficulty in fully articulating the basis for his beliefs, the trial court curtly denied his motion. Later at trial, counsel hit petitioner and demanded that he "shut the f**k up."

Amended Petition (#15), ¶ 13.  Petitioner exhausted this claim on direct appeal and it is properly before this court.[1]

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to ... have the Assistance of Counsel for his defense."  U.S. Const. amend. VI. This right has two components: (1) the right to conflict-free representation, and (2) the right to effective representation of counsel. *See Wheat v. United States*, 486 U.S. 153, 162 (1988) (right to assistance of counsel free of actual conflicts); *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)(right to the effective assistance of counsel).  The first portion of this right relates to an *actual conflict*, meaning that a defendant's attorney is representing conflicting legal interests. *Plumlee v. Masto*, 512 F.3d 1204, 1210 (9th Cir. 2008)(*en banc*); *Mickens v. Taylor*, 535 U.S. 162, 172-73 (2002)(finding a potential conflict of interest where trial counsel represented murder victim previously). Petitioner does *not* contend that Mr. Bethune had an actual conflict of interest, and therefore, this case concerns only the second portion.

The second portion of the Sixth Amendment right to counsel relates to counsel's role as an advocate.  *United States v. Chronic*, 466 U.S. 648, 656 (1967).

---

[1]Petitioner does not set forth a separate Due Process argument in his briefing, and therefore, I address only his Sixth Amendment arguments.

This right entitles the accused to "'a reasonably competent attorney,' whose advice is 'within the range of competence demanded of attorneys in criminal cases.'" *Id.* at 355 (quoting *McMann v. Richardson*, 397 U.S. 759, 770, 771 (1970)). Thus, under clearly established Federal law, to succeed on his Sixth Amendment claim, petitioner must demonstrate that Mr. Bethune's performance fell below an objective standard of reasonableness and that he suffered prejudice as a result. *Strickland*, 466 U.S. at 687; *Plumlee*, 512 F.3d at 1211.

Petitioner relies on Ninth Circuit precedent recognizing that the Sixth Amendment rights may be infringed if an accused and his counsel "become embroiled in an irreconcilable conflict" amounting to a "constructive denial of the Sixth Amendment right to counsel." *Stenson v. Lambert*, 504 F.3d 873, 886 (9th Cir. 2007); *Daniels v. Woodford*, 428 F.3d 1181 (9th Cir. 2005).

Yet, the Sixth Amendment does not guarantee, expressly or implicitly, a "meaningful relationship" between the accused and his counsel or that the relationship be free of discord.[2] *Morris v. Slappy*, 461 U.S. 1, 14 (1983); *Wheat v. United States*, 486 U.S. 153, 159 (1988)(noting the essential aim of the Sixth Amendment is

---

[2]Petitioner's reliance on "choice of counsel" cases is inapposite. There is no suggestion in the record below, or in his briefing to this court, that petitioner could or wanted to retain his own counsel. Indeed, in his direct appeal, petitioner presented his Sixth Amendment claim as one concerning appointed counsel. Resp. Ex. 104, p. 20-21.

to "guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers"). Thus, "not every conflict or disagreement between the defendant and counsel implicates Sixth Amendment rights." *Schell v. Witek*, 218 F.3d 1017, 1027 (9th Cir. 2000 (*en banc*)).

Therefore, the Ninth Circuit has determined that a conflict between a defendant and counsel will only rise to a Sixth Amendment violation "where there is a complete breakdown in communication between the attorney and client, and the breakdown prevents effective assistance of counsel." *Stenson*, 504 F.3d at 886 (citing *Schell*, 218 F.3d at 1026); *accord Daniels*, 428 F.3d at 1197 (nature and extent of conflict must be so great as to "depriv[e] the defendant of representation guaranteed by the Sixth Amendment."); *Larson v. Palmateer*, 515 F.3d 1057, 1066-67 (9th Cir. 2008)(same). If the conflict is so serious to result in a constructive denial of counsel, no showing of prejudice is required; otherwise a petitioner must show prejudice. *Schell,* 218 F.3d at 1027-28.

The Ninth Circuit examines three factors to determine whether a conflict between the accused and counsel rises to the "irreconcilable" level: 1) the adequacy of the inquiry by the trial court; 2) the extent of the conflict; and 3) the timeliness of the motion for substitution of counsel. *Stenson*, 504 F.3d at 886; *Daniels*, 428 F.3d at 1197.

In the instant case, petitioner argues that the trial court violated his Sixth Amendment right to counsel when it denied his motion for substitution of counsel.  Petitioner argues that the trial court failed to make the required "in depth inquiry" about the nature of the conflict between petitioner and Mr. Bethune, leading to a constructive denial of counsel violating the Sixth Amendment.  Habeas relief is not warranted.

The record reveals that petitioner first notified his attorney that he wanted new counsel appointed on December 28, 2006. Transcript of Proceedings, January 17, 2007, (Tr.) p. 1.  Due to conflicts in the court's schedule, a hearing on petitioner's motion for substitute counsel could not be set until January 17, 2007.  At that hearing, Mr. Bethune informed the court that petitioner had not specified his reasons for requesting new counsel, but that petitioner left him a voicemail in which petitioner noted that he was suing Mr. Bethune. *Id.* at 3.  Mr. Bethune informed the court that he had not received any papers to that effect. *Id.*  Mr. Bethune also informed the court that trial was set for the following week, but that due to an illness in his family, trial would likely be set over for a short period of time. *Id.* at 3-4. The court then asked petitioner to explain why he was requesting new counsel:

> Nunley: It seems like we have a conflicting interest. I
> don't feel that he will defend me to the best of this
> ability.

Court: Well, that's not a basis for the Court to remove Mr. Bethune. What is the reason you do not believe that he's representing you well? Your opinion that there's a conflict of interest in and of itself isn't sufficient. So what's the reason?

Nunley: I don't feel that he's been honest to me.

Court: Has not been honest with you?

Nunley: Yeah.

Court: In what way?

Nunley: Through the whole – since I've met him.

Court: Motion denied.

Tr. 4-5.

Petitioner then inquired whether he had to proceed with his current counsel, and the court informed him that he had not demonstrated that Mr. Bethune's representation had fallen below the professional standard of care. "Simply because you may not agree with the advice that he's given you is not a reason for me to remove Mr. Bethune." *Id.* at 5. The trial court then inquired of Mr. Bethune whether an actual conflict existed, and counsel confirmed the absence of an actual conflict. Tr. 5.

Petitioner has not established that the trial court's denial of his motion for substitute counsel was an unreasonable application of clearly established Federal law. *Morris*, 461 U.S. at 13-14; *Larson*, 515 F.3d at 1067. To be sure, petitioner concedes there was no actual conflict and thus, petitioner's dislike or distrust of Mr. Bethune does not rise to a Sixth

15 – OPINION AND ORDER

Amendment violation. Petitioner has failed to demonstrate that Mr. Bethune's representation fell below the *Strickland* standard or that the trial court's inquiry as to those standards was constitutionally defective. Moreover, petitioner cites no controlling Supreme Court authority requiring that the trial court's inquiry be conducted in private or be more searching. *Plumlee*, 512 F.3d at 1211 ("[Petitioner] has cited to no Supreme Court case – and we are not aware of any – that stands for the proposition that the Sixth Amendment is violated when a defendant represented by a lawyer free of actual conflicts of interest, but with whom the defendant refuses to cooperate because of dislike or distrust. Indeed, *Morris v. Slappy* is to the contrary.").

Petitioner's arguments also fail to show that the trial court's inquiry was inadequate under the Ninth Circuit's slightly expanded three part inquiry.[3] Petitioner complains that the trial court's inquiry was inadequate because it failed to delve into Mr. Bethune's representation and failed to ease his dissatisfaction with counsel's advice. *See Daniels*, 428 F.3d at 1200 ("A conflict inquiry is adequate if it ease[s] the defendant's dissatisfaction, distrust, and concern and provide[s] a sufficient basis for reaching an informed decision." (internal quotation marks and citation omitted)). I disagree.

---

[3]The timeliness of petitioner's motion for substitute counsel is not at issue.

First, the trial court promptly conducted an inquiry on petitioner's request for substitute counsel and found no basis to remove appointed counsel. When asked by the trial court to explain his difficulties with Mr. Bethune, petitioner simply responded that Mr. Bethune was not honest. When probed for details, petitioner provided none whatsoever. Furthermore, the trial court gave Mr. Bethune ample opportunity to respond to petitioner's complaints. Because the inquiry provided the trial court a sufficient basis for reaching an informed decision, the inquiry was more than adequate under the Sixth Amendment. *Plumlee*, 512 F.3d at 1211; *see also United States v. Prime*, 431 F.3d 1147, 1155 (9th Cir. 2005)(on direct appeal, court's inquiry on motion to substitute counsel was adequate because defendant given opportunity to express concerns and court inquired as to counsel's commitment to the case and his perspective on the degree of communication).

Second, even if the trial court's inquiry should have been more in depth, given the lack of evidence concerning the extent of the alleged conflict I cannot conclude that the state court's denial of his motion to substitute counsel was unreasonable. Petitioner has not demonstrated that any conflict existed between himself and Mr. Bethune amounting to a total breakdown in communication resulting in a constructive denial of counsel. *See Larson*, 515 F.3d at 1067. Petitioner's conclusory allegations that he felt Mr. Bethune was not honest with him or that he could not

trust Mr. Bethune are insufficient. Although petitioner allegedly informed Mr. Bethune that petitioner was suing Mr. Bethune, Mr. Bethune informed the court he had not received any such papers, and no such lawsuit has ever materialized. Tellingly, petitioner does not now identify *any* lack of communication that impeded Mr. Bethune's ability to provide a defense, resulting in a constructive denial of counsel. Unlike the situation in *Daniels*, petitioner has *not shown or alleged* that he completely refused to cooperate with Mr. Bethune, would not speak to Mr. Bethune, or did not assist Mr. Bethune with his defense. Petitioner did not make any other requests for substitute counsel or complain to the trial court about Mr. Bethune's representation. Indeed, the trial court found no breakdown in the attorney-client relationship, and stated that the disagreements over trial strategy were no basis to grant the motion to substitute.[4] *Stenson*, 504 F.3d at 886 ("[d]isagreements over strategical or tactical decisions do not rise to level of a complete breakdown in communication"). I conclude that the state court's rejection of petitioner's Sixth Amendment claim was not unreasonable. 28 U.S.C. § 2254(d).

Lastly, I reject petitioner's argument that Mr. Bethune was ineffective because he failed to adequately explain to petitioner

---

[4]Indeed, in an affidavit submitted to the post-conviction court, Mr. Bethune described his relationship with petitioner as polite and cordial, though acknowledging they disagreed about trial strategy. Resp. Ex. 119 p. 1.

that the consensual-sex defense petitioner insisted upon pursuing was lacking due to the nature of the injuries C.D. sustained. Petitioner now belatedly contends that had Mr. Bethune better explained the futility of petitioner's desired defense, petitioner would have made a more informed decision about proceeding to trial, suggesting that Mr. Bethune failed to adequately perform his "plea bargaining phase duties." Any argument that trial counsel was ineffective because petitioner would have taken a plea instead of going to trial was not exhausted in the PCR process and is not properly before me.

In summary, petitioner has failed to demonstrate that the state court's rejection of Ground Ten was contrary to, or an unreasonable application of, clearly established Federal law. 28 U.S.C. § 2254(d)(1).

## 2. hitting petitioner

In Ground Ten, petitioner alleges that Mr. Bethune struck him during the first day of trial and instructed him to "shut the f**k up," effectively terminating the attorney-client relationship. During the post-conviction proceeding, petitioner testified that on the first day of trial, petitioner was sitting to Mr. Bethune's left at counsel table, and that on one occasion, Mr. Bethune swung his left arm, hit petitioner in the chest, and told petitioner to shut up. Resp. Ex. 121, p. 3, 10-11. During the post-conviction proceeding, petitioner admitted that no one saw Mr. Bethune hit him

or heard Mr. Bethune tell petitioner to shut up.   Moreover, petitioner admitted that the incident did not appear in the transcript and that he did not bring the incident to the trial judge's attention.   *Id.* at 10-14.

In an affidavit submitted to the state post-conviction court, Mr. Bethune attested that he did not recall hitting petitioner during the trial, and did not tell him to shut up.   Resp. Ex. 119, p. 1.   Mr. Bethune further averred that his working relationship with petitioner was cordial and polite, although they disagreed about trial strategy at times.   *Id.*

In rejecting petitioner's ineffective assistance of counsel claim, the PCR court made the following factual findings:

> The court does not believe the attorney in open court during jury trial hit petitioner and told him to "Shut the f**k up."   I don't believe it.   Petitioner says no juror, observer or Judge saw or heard it.

*Id.* at 20.

Petitioner does not challenge the PCR court's factual findings in his supporting memorandum.   Consequently, petitioner has failed to rebut the post-conviction court's factual findings with clear and convincing evidence.   *See* 28 U.S.C. § 2254(e)(1).   Therefore, the PCR court's findings of fact are presumed correct.   Based on these facts, I cannot conclude that the state court has erred, much less made an unreasonable determination.   *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004).   The absence of any evidence that Mr. Bethune struck petitioner, told petitioner to shut up, or that

20 - OPINION AND ORDER

Mr. Bethune behaved in a manner that prejudiced petitioner in front of the jury warrants deference to the state court's rejection of petitioner's Sixth Amendment claim.

In short, petitioner has not demonstrated that Mr. Bethune's performance fell below an objectively reasonable level, or that petitioner suffered prejudice as a result of Mr. Bethune's actions. The state court's rejection of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law.  28 U.S.C. § 2254(d).

## CONCLUSION

Based on the foregoing, petitioner's amended petition for writ of habeas corpus (#15) is DENIED, and this proceeding is DISMISSED, with prejudice.

Because petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability is DENIED.  See 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this __4__ day of AUGUST, 2014.


_Malcolm F. Marsh_
Malcolm F. Marsh
United States District Judge

21 - OPINION AND ORDER